**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOURNEYS E-SCOOTERS LLC, et al.,<br>Plaintiffs,<br>v.<br>JULIO ROLDÁN-CONCEPCIÓN, et al.,<br>Defendants. | **Civil No. 22-1281 (GMM)** |

**OPINION AND ORDER**

Pending before the Court is Defendant Frank Hernández-Hernández's ("Hernández") *Renewed Motion Under Fed.R.Civ.P. 50, for Judgment as a Matter of Law; Motion to Alter or Amend Judgment Pursuant to Fed.R.Civ.P. 59* ("*Rule 50(b) Motion*"). (Docket No. 104). For the reasons explained herein, the *Rule 50(b) Motion* is **GRANTED.**

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case stems from a series of events that occurred in August 2021 which culminated in Plaintiff Enrique Quiñones-Vázquez's ("Quiñones") arrest. *See generally* (Docket No. 1). As a result, Quiñones, his wife Jaimys Santana González ("Santana"), their conjugal partnership, and their corporation Journeys E-Scooters LLC (collectively, "Plaintiffs"), filed a *Complaint* under 42 U.S.C. § 1983 against the Mayor of the Municipality of Aguadilla ("Municipality of Aguadilla"), Hon. Julio Roldán-Concepción

(“Mayor Roldán”) in his official capacity, former Lieutenant of the Aguadilla Municipal Police Hernández, in his individual and official capacities, and the Municipality of Aguadilla (collectively, “Defendants”). Plaintiffs alleged that Defendants arrested Quiñones without a warrant or probable cause, in violation of the Fourth Amendment. (Id. at 12 ¶ 48).

The case proceeded to trial, which was held from September 2, 2025 to September 9, 2025. (Docket Nos. 84, 86, 88-89). On September 4, 2025, during the third day of trial and after Plaintiffs rested, Mayor Roldán and Hernández moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). After hearing oral arguments, the Court denied without prejudice the Rule 50(a) motion, subject to renewal after the jury heard Defendants’ evidence. *See* (Docket No. 88 at 1).

That same day, the *Municipality of Aguadilla’s Rule 50 Motion for Judgment as a Matter of Law* was filed. (Docket No. 87). The Court granted it upon a finding of lack of municipal liability as a matter of law. (Docket No. 88).

On September 8, 2025, after Defendants rested, Mayor Roldán and Hernández renewed their Rule 50(a) motion. After hearing arguments, the Court again denied the motion because “credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts regarding the finding of

probable cause are jury functions, not those of a judge." (Docket No. 90 at 1).

On September 9, 2025, the jury returned a verdict in favor of Plaintiffs against Hernández and awarded Plaintiffs a total of $85,000 in damages. (Dockets Nos. 91-92). The jury found Mayor Roldán not liable. (Id.). Consequently, *Judgment* was entered and the claims against the Municipality of Aguadilla and Mayor Roldán were dismissed with prejudice. (Docket No. 96).

On October 8, 2025, Hernández renewed his motion for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b). (Docket No. 104). In his *Rule 50(b) Motion*, Hernández argues that Ordinance 59 of the Municipality of Aguadilla in Section 01 prohibits: (1) operating street or fixed businesses in the vicinity of Paseo Carlos Méndez Martínez ("Paseo Real Marina"), except for those authorized by the Municipality of Aguadilla, and (2) parking trucks along Paseo Real Marina. (Id. at 8). Hernández alleges that Quiñones "admitted that he parked his truck on three (3) consecutive days at Paseo Real Marina, while delivering scooters." (Id.). Per Hernández, Quiñones's "repeated defiance of municipal law despite direct warnings" granted Hernández a "reasonabl[e] belie[f] that Plaintiff was obstructing his duties as a municipal officer." (Id. at 9). Hernández proceeded to arrest Quiñones without a warrant for the misdemeanor offense of obstruction of

justice under Article 246 of the Puerto Rico Penal Code. (Id.).

Hernández posits that he is entitled to qualified immunity since he "had probable cause to believe Plaintiff was obstructing his enforcement of Ordinance 59" and "[t]here is no evidence he knowingly violated clearly established law." (Id. at 14). To this point, Hernández contends that "a reasonable officer in [his] position could have believed the arrest lawful under these circumstances and the information Hernández had at the time." (Id. at 15). Hernández further claims that - even if he committed a mistaken assessment of the law - he "had arguable probable cause to arrest Plaintiff for repeatedly parking and conducting business at Paseo Real Marina in direct violation of Ordinance 59." (Id.). Lastly, Hernández asserts that if the federal claims under Section 1983 are dismissed, Santana is not entitled to a remedy under Puerto Rico law that would be premised on supplemental jurisdiction. (Id. at 16).

On October 21, 2025, *Plaintiffs' Memorandum of Law in Opposition to Defendant Hernández's Renewed Motion for Judgment as a Matter of Law and Motion to Alter the Judgment* was filed. (Docket No. 107). Therein, Plaintiffs contend that Hernández's probable cause argument "completely ignores the factual findings inherent in the jury's verdict." (Id. at 5). Plaintiffs assert that, "[b]y finding that Hernández 'illegally arrest[ed]' Quiñones, the jury

necessarily concluded that probable cause was absent." (Id.).

Plaintiffs question Hernández's authority to arrest Quiñones, arguing that the "jury's verdict implies a finding that Hernández was not lawfully discharging his duties when he confronted Mr. Quiñones, but was instead attempting to enforce an un-posted, and therefore unenforceable, ordinance." (Id. at 6). In addition, Plaintiffs contend that Hernández is not entitled to qualified immunity because the jury found that there was no probable cause for the arrest. (Id. at 7). According to Plaintiffs, the "jury credited testimony that Mr. Quiñones was not violating any posted ordinance and was trying to comply with police instructions." (Id.). Based on those findings, Plaintiffs posit that no reasonable officer would have believed the arrest was lawful. (Id.).

On October 29, 2025, Hernández filed a *Reply to Opposition to Renewed Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(b); Motion to Alter or Amend Judgment pursuant to Fed.R.Civ.P. 59(e)*, reiterating his arguments. (Docket No. 110).

## II. LEGAL STANDARD

A. Rule 50(b)

Federal Rule of Civil Procedure 50 allows a district court to issue judgment as a matter of law where it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" in accordance with "the controlling

law." Fed. R. Civ. P. 50(a). If a Rule 50(a) motion is not granted, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial." Id. 50(b).

Under Rule 50(b), a jury "verdict should be set aside only if the jury failed to reach the only result permitted by the evidence." Lestage v. Coloplast Corp., 982 F.3d 37, 46 (1st Cir. 2020) (*quoting* Analysis Grp., Inc. v. Cent. Fl. Invs., Inc., 629 F.3d 18, 22 (1st Cir. 2010)). In addressing a renewed motion for judgment as a matter of law, this Court "construe[s] facts in the light most favorable to the jury verdict, draw any inferences in favor of the non-movant, and abstain from evaluating the credibility of the witnesses or the weight of the evidence." Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 37 (1st Cir. 2020).

"[A] party seeking to overturn a jury verdict faces an uphill battle." Heredia v. Roscoe, 125 F.4th 34, 44 (1st Cir. 2025) (internal quotation omitted). Indeed, the Court's review of the record is "'weighted toward preservation of the jury verdict.'" Quiles-Quiles v. Henderson, 439 F.3d 1, 4 (1st Cir. 2006) (*quoting* Crowley v. L.L. Bean, Inc., 303 F.3d 387, 393 (1st Cir. 2002)).

On appeal, a district court's denial of a Rule 50(b) motion for judgment as a matter of law must be affirmed "unless the

evidence . . . could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." In re Blomquist, 925 F.3d 541, 546 (1st Cir. 2019) (*quoting* Lama v. Borrás, 16 F.3d 473, 476 (1st Cir. 1994)).

B. Rule 59(e)

A Rule 59(e) motion asks the Court to alter or amend judgment. Fed. R. Civ. P. 59(e). A movant "must either clearly establish a manifest error of law or must present newly discovered evidence" to warrant such relief. United States ex rel. Ge v. Takeda Pharm. Co. Ltd., 737 F.3d 116, 127 (1st Cir. 2013) (citation modified). This motion is an "extraordinary remedy which should be used sparingly." Salmon v. Lang, 57 F.4th 296, 323 (1st Cir. 2022) (internal quotation omitted).

## III. APPLICABLE LAW AND ANALYSIS

Rejecting the verdict of a dedicated, intelligent, and assiduous cross section of the community — as this jury was — can only be justified on the strongest grounds. Yet the applicable law requires judgment as a matter of law in Hernández's favor notwithstanding the jury's determination that the arrest was unsupported by probable cause.

The Court begins with the constitutional claim underlying the qualified-immunity analysis. The Court must determine whether the

constitutional right was clearly established and whether, viewing the evidence consistently with the jury's discernible factual findings, a reasonable officer in Hernández's position could have believed that probable cause existed.

Principally, the parties disagree as to whether Hernández should be shielded by qualified immunity, and if so, whether this warrants judgment as a matter of law under Rule 50(b) or, alternatively, amendment of the judgment under Rule 59(e). *See generally* (Docket Nos. 104, 107, 110). Viewing the record in the light most favorable to retaining the jury's verdict, this Court is nevertheless compelled to overturn the decision as a matter of law.

A. Qualified Immunity

Before diving into immunity, a primer on the underlying claims. Quiñones sued under Section 1983, alleging Hernández deprived him of his rights under the Fourth Amendment. *See generally* (Docket Nos. 1, 107).

Section 1983 is a vehicle by which plaintiffs can sue state and local officials for violations of federal rights. Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). The Fourth Amendment, in turn, protects individuals from unreasonable seizures, including arrests made without probable cause. U.S. Const. amend. IV; *see* Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir.

2021).

While Section 1983 exposes public officials like Hernández to suit for constitutional violations, qualified immunity may shield them from liability. Qualified immunity applies when an official's "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (*quoting* Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The qualified immunity defense can only be raised by persons sued in their individual capacity, not in their official capacity. González v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993). This defense may be raised only against a suit for monetary damages. *See* Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 n.3 (1st Cir. 1994).[1]

As developed, the doctrine "seeks to balance two opposing interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform

---

[1] The Rule 50(b) Motion was brought by Hernández in his individual capacity. Hernández was also sued in his official capacity. Because an official-capacity claim against a municipal officer is treated as a claim against the municipality itself, and the Court entered judgment as a matter of law in favor of the Municipality of Aguadilla, no independent official-capacity claim against Hernández remains. *See* Brandon v. Holt, 469 U.S. 464, 472 (1985) ("[O]ur opinion clearly equated the actions of the [city employee] in his official capacity with the actions of the city itself.") (*citing* Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). As such, the Court confines its analysis to Hernández's individual capacity.

their duties reasonably.'" Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 39 (1st Cir. 2024) (*quoting* Pearson, 555 U.S. at 231). "The goal of qualified immunity is to 'give[ ] government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" Ciarametaro v. City of Gloucester, 87 F.4th 83, 87-88 (1st Cir. 2023) (alteration in original) (*quoting* Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)). "[T]he availability of qualified immunity after a trial is a legal question informed by the jury's findings of fact but ultimately committed to the court's judgment." Heredia v. Roscoe, 125 F.4th 34, 46 (1st Cir. 2025) (*quoting* Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010)). In conducting this analysis, the Court must construe the evidence in the light most favorable to the party that prevailed at trial, giving "deference . . . to the jury's discernible resolution of disputed factual issues." Raiche, 623 F.3d at 35 (alteration in original).

Ultimately, "[t]he dispositive question is 'whether the violative nature of [the public officer's] *particular* conduct is clearly established.'" Mullenix, 577 U.S. at 11 (emphasis in original) (*quoting* al-Kidd, 563 U.S. at 742) (in the context of the Fourth Amendment)). This standard protects "all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 580 U.S. 73, 79 (2017).

The jury already determined that Hernández deprived Quiñones of a constitutional right based on the evidence adduced at trial, including credibility determinations, and the instructions provided by this Court.

Now, to review the motion before it, this Court follows the First Circuit's guidance in examining Hernández's qualified immunity claim. The Court must determine whether the law was clearly established at the time of the events and, in accordance with the particular facts already determined by the jury, whether Hernández deprived Quiñones of his rights or had probable cause to arrest him.

1. Clearly Established

The clearly established standard presupposes that, at the time of the officer's conduct, the law was "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful. al-Kidd, 563 U.S. at 741 (citation modified). For a right to be clearly established, there must be either "controlling authority or a robust consensus of cases of persuasive authority" affirming the plaintiff's entitlement to such a right. Ciarametaro, 87 F.4th at 88 (*quoting* al-Kidd, 563 U.S. at 741-42) (citation modified). Although the authority need not be "directly on point," it must be "sufficiently analogous to 'place[ ] the statutory or constitutional question beyond debate.'" Id.

As the First Circuit has explained, "[t]he 'clearly established' inquiry itself has two elements." Penate v. Hanchett, 944 F.3d 358, 366 (1st Cir. 2019). The first element requires courts to consider "the clarity of the law at the time of the violation." Id. (internal quotation omitted). That can be satisfied by finding binding or persuasive case law addressing similar facts, or a more general accepted proposition that applies with obviousness to the facts in question. Berge, 107 F.4th at 38–39. The second element requires courts to consider "the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." Penate, 944 F.3d at 366 (*quoting* Drumgold v. Callahan, 707 F.3d 28, 42 (1st Cir. 2013)). As to the Fourth Amendment violations alleged by Quiñones, "[t]here is little question that it is clearly established law that an individual cannot be arrested absent probable cause." Fernández-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 326 (1st Cir. 2015) (*citing* Kaupp v. Texas, 538 U.S. 626, 630 (2003) (per curiam)). Indeed, "[i]t is hornbook law that the Fourth Amendment requires probable cause to place an individual under arrest." Alfano v. Lynch, 847 F.3d 71, 76 (1st Cir. 2017).

To be sure, an arrest made without probable cause is a false arrest. Finamore v. Miglionico, 15 F.4th 52, 58, 61 (1st Cir.

2021). And "[f]or false arrest claims . . . the qualified immunity standard is more forgiving than the standard for probable cause." Rizzuti v. Cappabianca, 791 F. Supp. 3d 270, 325 (D. Mass. 2025); *see also* Aaron v. City of Lowell, 666 F. Supp. 3d 102, 123 (D. Mass. 2023) (holding that "[q]ualified immunity 'requires a somewhat lesser showing'" compared to a probable cause analysis on the merits) (*quoting* Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004)).

The law, therefore, is clear that Quiñones had a right to be free from arrest by Hernández absent probable cause. As such, this Court moves to examine the next requisite factor to determine whether Quiñones's right was violated.

2. Deprivation of a Constitutional Right

It is a long-settled principle that warrantless arrests must be supported by probable cause. The question here is whether "the presence of probable cause is at least arguable," Moses v. Mele, 711 F.3d 213, 216 (1st Cir. 2013) (quoting Ricci v. Urso, 974 F.2d 5, 6-7 (1st Cir. 1992)), even if a court later determines that there was no probable cause to effectuate the arrest. Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). This applies with equal force to Fourth Amendment claims and tortious false arrest brought via Section 1983. *See* Wilber v. Curtis, 872 F.3d 15, 21 (1st Cir. 2017).

For qualified-immunity purposes, the Court need only determine whether a reasonable officer could have believed that probable cause existed. Probable cause is understood as "where reasonably trustworthy facts and circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime (even if it differs from the one named by police during the arrest or booking)." Robinson v. Cook, 706 F.3d 25, 33 (1st Cir. 2013), cert. denied, 570 U.S. 905 (2013). It is arguable where "officers of reasonable competence" may fairly disagree over whether probable cause exists. Malley v. Briggs, 475 U.S. 335, 341 (1986).[2] This dovetails again with the requirement to look at the specific facts of each case. To be sure, a probable cause inquiry within the context of qualified immunity "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 577 U.S. at 11 (*quoting* Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" Id.

---

[2] The fact that a misdemeanor offense was involved does not alter the analysis. The Supreme Court of the United States has stated that even a very minor criminal offense in a police officer's presence may provide the basis for the arrest of the offender without violating the Fourth Amendment. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

(*quoting* Saucier v. Katz, 533 U.S. 194, 204 (2001)).

As to the case at hand, the relevant question is "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Burke v. Town of Walpole, 405 F.3d 66, 77 (1st Cir. 2005). Consequently, the Court examines whether – as a matter of law – a reasonable police officer similarly situated to Hernández would have known his conduct violated Quiñones's Fourth Amendment right not to be arrested without at least arguable probable cause.

Quiñones was arrested by Hernández and charged with the misdemeanor obstruction of justice under Article 246 of the Puerto Rico Penal Code for violating Ordinance 59 in the presence of the police officer. (Docket No. 78 at 2-3 ¶¶ 8-13; 111 at 15-16 ¶¶ 8-13). Under Article 246, it is a misdemeanor crime to resist or obstruct the exercise of public authority willfully or with knowledge by preventing a government official or public employee from discharging or attempting to discharge their official duties. *See* P.R. Laws. Ann. tit. 33, § 5336 (2012). "Any act of opposition to an order an officer is trying to carry out constitutes resistance to authority. It is essential, however, that the public officer or employee perform his duty in a lawful manner." Pueblo v. Ortiz Díaz, 23 P.R. Offic. Trans. 749 (P.R. 1989).

The jury was provided specific instructions as to Quiñones's arrest without probable cause under state and federal law. *See* (Docket No. 111 at 38-42). After receiving and reviewing the evidence, the jury found that Hernández had violated Quiñones's Fourth Amendment right by illegally arresting him and pressing charges against him. To wit, the jury found that Hernández had no probable cause to arrest Quiñones. (Docket Nos. 91, 92).

Keeping in mind again that when a plaintiff asserts "a § 1983 claim that seeks to hold a police officer liable for making a warrantless arrest without probable cause, 'if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach,'" Wilber, 872 F.3d at 21, the Court finds it necessary to go through the sequence of events that led to Quiñones's arrest. According to the evidence that was admitted during trial, and the facts presented to the jury, the Court finds that arguable probable cause existed to arrest Quiñones.

Quiñones's testimony admits as much. During the second day of trial, Quiñones testified that on August 18, 2021, he went to Paseo Real Marina to deliver some scooters for some clients that had previously made their reservation online through the E-Scooters internet platform. (Unofficial Transcript, Second Day of Jury Trial at 10-11). Specifically, this was Quiñones's testimony:

> Once we were ready to make the delivery, we went to Aguadilla and parked, and as we were getting ready to

> deliver the scooters to the clients, we parked at a parking that is along the parking right there at Paseo Real Marina, and while we're bringing down the scooters to give them to the clients and explain to them how the scooters work, the Mayor came and stood right next to us and told us that we could not be there because we were given some permits to work from our home.[3]

(Id. at 11-12).

Quiñones further testified that after Mayor Roldán left, Hernández arrived and "[h]e told me that I could not park there and then I told him that I didn't know that I could not park there, because there were no signs." (Id. at 12). According to Quiñones's testimony, the next day, August 19, 2021, he "went to deliver some scooters at Paseo Real Marina" and "the lieutenant arrived with Ordinance 59 stating that I could not park on that place. And he issued a ticket together with [O]rdinance 59." (Id. at 13); *see also* (id. at 51-62). The record reflects that he was given a copy of Ordinance 59 which readily proscribes that any person "establish mobile or stationary businesses in the areas surrounding Paseo [Real Marina], with the exception of businesses properly authorized by the municipality for special activities"; "park[ing] on sidewalks within Paseo [Real Marina], at all times"; and

[3] According to the "Single Permit", which was admitted into evidence as Joint Exhibit #2, it was a residential application authorized to operate at the physical address "Carr 2 KM 126.4 BO. Caimital Bajo, Aguadilla, Puerto Rico, 00603." Quiñones admitted during cross-examination that this "Single Permit" authorized him to conduct his business only at his business address, which was his residential address. (Unofficial Transcript, Second Day of Jury Trial at 39).

"park[ing] heavy trucks, public or private buses, tow trucks, wagons, or trailers throughout the Paseo Real Marina".[4] (Id. at 53-55).

Quiñones further declared that on August 20, 2021, he was "getting ready to deliver the scooters at Paseo Real Marina" when Hernández "arrives for the third time and told me that I could not be there" and issued a second ticket. (Id. at 18-19). Quiñones's testimony goes on to acknowledge that he was arrested by Hernández on August 21, 2021, after he was issued that second ticket. (Id. at 20-23).

In other words, by Quiñones' own testimony: (1) he did not have a permit from the Municipality of Aguadilla to establish or operate his scooter business in the areas surrounding Paseo Real Marina; (2) he admitted parking his truck at Paseo Real Marina for several consecutive days, while delivering scooters and waiting for clients—conduct expressly prohibited by Ordinance 59; (3) he was advised by Hernández on numerous occasions that he violated local law; (4) he declared that Hernández himself warned him to not park near Paseo Real Marina nor conduct his scooter business there, issuing him two tickets and providing him a copy of the ordinance that unequivocally establishes these prohibitions, and

[4] Ordinance 59 was admitted into evidence as Joint Exhibit #3. See Section 01 of Ordinance 59.

(5) despite these repeated warnings, Quiñones continued to park at Paseo Real Marina and continued to deliver his scooters in the area proscribed by Ordinance 59.

Overturning a jury's verdict is a serious matter. Even so, the law does not allow for any other conclusion. Based on these facts and circumstances known to Hernández and clearly established law "a reasonably competent police officer could have believed that probable cause existed to arrest." Ricci, 974 F.2d at 6-7. A reasonable officer in his position could conclude that Hernández had at least arguable probable cause to determine that Quiñones was obstructing Hernández's attempts to enforce compliance with Ordinance 59 and Puerto Rico's Traffic Act. Hernández's ultimate arrest of Quiñones certainly reaches the comparatively forgiving standard of at least arguable probable cause that the qualified immunity doctrine demands.

For substantially the same reasons, and under the First Circuit's treatment of Puerto Rico tort law in this context, Hernández is not personally liable on the parallel Puerto Rico false arrest claim. Because Hernández is not subject to liability on the underlying Puerto Rico tort claim, Santana's derivative damages claim likewise fail.[5]

---

[5] The First Circuit has repeatedly proceeded on the understanding that Puerto Rico tort law ordinarily would not impose personal liability where an officer would be protected by qualified immunity from the corresponding federal

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Rule 50(b) Motion* is **GRANTED.** The Court enters judgment in favor of Hernández, in his individual capacity, and dismisses claims filed against him with prejudice. The Court also dismisses the Puerto Rico-law claims against Hernández, with prejudice. To the extent that claims filed against the Municipality of Aguadilla were previously dismissed, claims against Hernández in his official capacity are also dismissed with prejudice. Amended Judgment shall be entered accordingly pursuant to Rule 50(b). Because the Court's ruling rests on qualified immunity under Rule 50(b), it need not reach Hernández's alternative request for relief under Rule 59(e).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on September 23, 2026.

s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE

constitutional claim. *See* Soto-Cintrón ex rel. A.S.M. v. United States, 901 F.3d 29, 34–35 (1st Cir. 2018) (referencing a Bivens claim, but applying the qualified immunity doctrine).; Solis-Alarcón v. United States, 662 F.3d 577, 583 (1st Cir. 2011). Applying that principle here, Hernández is likewise protected from personal liability under Puerto Rico law.